Erwin v. Myers Park Country Club, Inc., 2021 NCBC 45.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 21 CVS 4936 |

MARK ERWIN,

       Plaintiff,

v.

MYERS PARK COUNTRY CLUB, INC.,

       Defendant.

**ORDER AND OPINION
ON PLAINTIFF'S
INSPECTION REQUEST**

1. **THIS MATTER** is before the Court on plaintiff Mark Erwin's ("Erwin") request for an order compelling defendant Myers Park Country Club, Inc. ("Myers Park") to allow Erwin to inspect certain records of Myers Park (the "Inspection Request"). Erwin contends that he is entitled to inspect these records under the North Carolina Business Corporation Act (the "Corporation Act"), N.C.G.S. § 55-1-01, *et seq.* and that Myers Park has refused, notwithstanding a proper request, to allow Erwin to inspect them. For the reasons set forth in this Order and Opinion, the Court **GRANTS in part** and **DENIES in part** the Inspection Request.

> *Nelson Mullins Riley & Scarborough LLP, by David N. Allen, Benjamin S. Chesson, and Anna C. Majestro, for Plaintiff Mark Erwin.*
>
> *James, McElroy & Diehl, P.A., by John R. Buric and John R. Brickley, and Cranfill Sumner LLP, by Melody J. Jolly, for Defendant Myers Park Country Club, Inc.*

Robinson, Judge.

## I.    PROCEDURAL BACKGROUND

2. Erwin filed his Complaint on 29 March 2021, which sets forth the Inspection Request as the sole claim for relief. (Compl. 8–10, ECF No. 3.) Erwin also

seeks to recover the costs and expenses of this action from Myers Park, including Erwin's attorneys' fees. (Compl. 11.)

3. On 30 March 2021, this action was designated as a mandatory complex business case by Order of the Chief Justice of the Supreme Court of North Carolina and assigned to the undersigned by Order of the Chief Business Court Judge. (ECF Nos. 1–2.)

4. Promptly after the designation and assignment of this case, the Court directed the parties to file a joint status report setting forth their joint or respective positions on a briefing schedule for the Inspection Request and whether any discovery was needed in this action. The parties filed the requested joint status report on 9 April 2021. (ECF No. 9.)

5. Myers Park filed its Answer on 28 April 2021, (Answer, ECF No. 18), and later filed, with leave of Court, an Amended Answer on 15 July 2021, (Am. Answer, ECF No. 38).

6. After the Court conducted multiple status conferences and twice extended a briefing schedule in this matter upon the request of the parties, the Court entered its final Scheduling Order on 11 June 2021. (ECF No. 28.)

7. The Inspection Request has been fully briefed, and each side has submitted several supporting documents for the Court's consideration. The Court held an in-person hearing on the Inspection Request on 7 July 2021, at which all parties were represented by counsel (the "July 7 Hearing").

8.     The Inspection Request is now ripe for resolution.  Having considered all relevant matters, the Court issues the following findings of fact and conclusions of law for the limited purpose of ruling on the Inspection Request.[1]

## II.     FINDINGS OF FACT

9.     Myers Park is a corporation organized and existing pursuant to the laws of North Carolina.  (Compl. ¶ 2.)[2]  Its principal place of business is in Mecklenburg County, North Carolina, where it operates as a country club.  (Compl. ¶ 3.)

10.    Erwin has been a club member and shareholder of Myers Park since 2008. (Compl. ¶ 7.)

11.    In 2020, Myers Park's board of directors (the "Board") approved a renovation and remodeling plan for the country club, which the Board called the Connecting the Centuries Project (the "Project").  (Compl. ¶ 10.)  The Project is expected to cost approximately $27 million in total and will be partially funded through a combination of assessments, monthly fees, and member fees.  (Compl. ¶¶ 13–14.)

12.    On 12 March 2021, Erwin's counsel sent a letter on Erwin's behalf to Myers Park, demanding that it permit Erwin to inspect and copy certain records (the "Inspection Demand").  (Compl. ¶ 30.)  Erwin's counsel delivered the Inspection

---

[1] To the extent that any findings of fact are more properly considered conclusions of law, the Court intends for them to be considered as such, and vice versa. *See Sheffer v. Rardin*, 208 N.C. App. 620, 624 (2010).

[2] Factual findings set forth herein that are derived from the Complaint are allegations that Myers Park admitted in its Amended Answer.

Demand to Myers Park's registered address and also by email to its president, registered agent, and general manager. (Compl. ¶ 31.)

13. A copy of the Inspection Demand, dated 12 March 2021, is attached to Erwin's Complaint as Exhibit A. (Compl. ¶ 30; Compl. Ex. A ["Demand"].)

14. According to the Inspection Demand, Erwin seeks to "obtain information from Myers Park about the proposed 'Connecting the Centuries' project and a delay of the project so the membership can fully consider the new information." (Demand 1.) The Inspection Demand further asserted that "[t]he Project raises many concerns ranging from the Board's process to push it through to the financial feasibility and implication on Myers Park's financial health." (Demand 2.)

15. In the Inspection Demand, Erwin requested to inspect the following eleven numbered categories of records:[3]

> 1. A list of the names, addresses, phone numbers, and email addresses of all current Myers Park shareholders in alphabetical order, by class of shares showing the number and class of shares held by each.
>
> 2. A list of the names, addresses, phone numbers, and email addresses of all current Myers Park members in alphabetical order by category of membership.
>
> 3. The minutes of all Myers Park shareholders meetings and Board meetings, and the records of all final actions taken by Myers Park shareholders, the Board, or committees of the Board in place of the Board without a meeting that address or discuss: (a) the Project; (b) Myers Park revenue shortfalls; or (c) plans or proposals to address revenue shortfalls.

---

[3] When referring to one of these categories, the Court will use the applicable number associated with the category in the Inspection Demand, i.e., "request number 1," "request number 2," etc.

4.  All written communications to shareholders generally that address or discuss: (a) the Project; (b) Myers Park revenue shortfalls; or (c) plans or proposals to address revenue shortfalls.

5.  The capital and operating budgets that: (a) the Financial Committee in coordination with the General Manager recommended to the Board for adoption for 2020 and 2021, as required in Article IX, Section 2(a) of the Bylaws; and (b) and [sic] the Board approved for 2020 and 2021, along with all amendments to those budgets, as required in Article IX, Section 2(b) of the Bylaws.

6.  All capital expenditures in excess of $5,000, which are required to be approved by the Board in Article IX, Section 2(c) of the Bylaws, related to: (a) the Project; or (b) any plans or proposals to address revenue shortfalls.

7.  All Myers Park accounting records and financial statements, including but not limited to: balance sheets, general ledgers, income/profit and loss statements, and cash flow statements.  Please produce all unaudited and audited copies of these records.

8.  Myers Park's annual financial statement for 2020 that meets the requirements of N.C.G.S. § 55-16-20.

9.  All reports prepared by and communications with the planning consultants, the building contractors and subcontractors, and any other consultants or advisors that Myers Park retained in connection with the Project.

10.  All invoices, correspondence, contracts, reports, projections, plans, or budgets from any consultants or other third parties Myers Park has retained or has considered retaining in connection with the Project.

11.  All communications between any member of the Board and any other person that discuss: (a) the Project; (b) Myers Park revenue shortfalls; or (c) plans or proposals to address revenue shortfalls.

(Demand 3–4.)  The relevant time period for the requested records is 1 January 2019 through 12 March 2021,[4] unless otherwise indicated within a specific request.

---

[4]  The Inspection Demand set the end date as "through the present," which the Court interprets to mean 12 March 2021—the date of the Inspection Demand.  (Demand 3.)

(Demand 3.)

16. The Inspection Demand also stated as follows:

> [Erwin] is making this demand for inspection in good faith and for a proper purpose, specifically to investigate: (1) whether the Project is in the best interest of Myers Park; (2) whether the Board's approval of the Project complies with Myers Park's Bylaws; (3) whether any improper transactions have occurred in connection with the Board's approval of the Project; (4) any potential mismanagement, misappropriation, misapplication, conflict of interest, or improper use of Myers Park funds related to the Project; and (5) the Project's financial feasibility and implications on costs, debt, fees, and income.

(Demand 5.) The Inspection Demand further disclosed that Erwin "intends to communicate" with other club members and shareholders of Myers Park about his investigation into these matters.[5] (Demand 3.)

17. The Inspection Demand requested that Myers Park send Erwin and his counsel electronic copies of the requested records or otherwise make the records available for inspection no later than 22 March 2021. (Demand 3.)

18. Myers Park did not produce any of the records requested in the Inspection Demand by 22 March 2021. (Compl. ¶ 38.)

19. On 29 March 2021, Erwin filed his Complaint and asserted his Inspection Request, which asks the Court to "summarily order the inspection and copying of the records [Erwin] demanded in the March 12, 2021 Inspection Demand at Myers Park's expense" pursuant to N.C.G.S. § 55-16-04. (Compl. ¶ 62.)

---

[5] The Inspection Demand alleged that "approximately 200 other Myers Parks shareholders and members" also have concerns about the Project. (Demand 1.) Erwin, however, has not identified any of these other shareholders and members. Moreover, in the Inspection Demand, Erwin was the only member and shareholder who claimed a statutory right to inspect Myers Park's records. (Demand 3.)

20.     Also on 29 March 2021, Myers Park "began making a rolling production of documents" responsive to the Inspection Demand.[6] (Def.'s Resp. Br. 5, ECF No. 33.) Since that date, Myers Park has produced additional records responsive to the Inspection Demand, as addressed more fully below. (*See generally* Pl.'s Opening Br., ECF No. 32.2; Def.'s Resp. Br.)

21.     On 10 May 2021, Erwin's counsel deposed Myers Park's Rule 30(b)(6) designee, Jean Zoutewelle ("Zoutewelle"). (Pl.'s Opening Br. Ex. F, ECF No. 32.3 ["Zoutewelle Dep."].) Zoutewelle's deposition was limited to certain topics, as set forth in an Order entered by the Court on 20 April 2021. (ECF No. 16.) Erwin has filed excerpts of Zoutewelle's deposition testimony for the Court's consideration.[7]

22.     On 16 June 2021, Myers Park's counsel deposed Erwin. Erwin's deposition was also limited to certain topics, as set forth in the Court's 11 June 2021 Scheduling Order. Myers Park, however, has not filed any excerpts of Erwin's deposition testimony for the Court's consideration.

## III.    CONCLUSIONS OF LAW

23.     The Court first addresses request numbers 1, 2, 7, 8, and 11 from the Inspection Demand.

---

[6] Erwin represented in his Complaint and supporting brief that Myers Park began producing documents responsive to the Inspection Demand on 25 March 2021, and not 29 March 2021, as it represented in its opposition brief. As a result, the Court asked counsel for the parties during the July 7 Hearing to confirm the date when Myers Park began its document production, and counsel confirmed that the production began on 29 March 2021.

[7] The Court has carefully considered Zoutewelle's deposition testimony, and the Court will reference any specific testimony relevant to its analysis of the Inspection Demand in the Conclusions of Law section.

24.     The record before the Court, including the representations of counsel for the parties during the July 7 Hearing, establishes that, after the filing of Erwin's Complaint, Myers Park produced all records responsive to request numbers 1, 2, and 8 and also produced its 2019 and 2020 financial statements, as demanded in request number 7.  As a result, the Court denies as moot request numbers 1, 2, and 8 in their entirety and further denies as moot request number 7 to the extent that this request demanded Myers Park's "financial statements, including but not limited to: balance sheets, . . . income/profit and loss statements, and cash flow statements" from 1 January 2019 through 12 March 2021.  (Demand 4.)[8]  To be clear, though, the Court's denial in this regard does not prejudice Erwin's right to pursue recovery of the costs and expenses of this action due to the fact that many of the documents requested by Erwin were only produced by Myers Park after the deadline set forth in the Inspection Demand had passed and Erwin had filed his Complaint.

25.     Request number 11 demanded "[a]ll communications between any member of the Board and any other person that discuss: (a) the Project; (b) Myers Park revenue shortfalls; or (c) plans or proposals to address revenue shortfalls" from 1 January 2019 through 12 March 2021.  (Demand 4.)  The breadth of this request is questionable.   Additionally, Erwin's briefing is completely devoid of any legal argument supporting this request, and at the July 7 Hearing, Erwin's counsel failed to articulate a sound legal basis for the request.  Consequently, the Court is unable

---

[8] Based on the Court's review of the record, including Zoutewelle's deposition testimony, (*see, e.g.*, Zoutewelle Dep. 63), it appears that Myers Park's "balance sheets," "income/profit and loss statements," and "cash flow statements" were included among the financial statements that Myers Park provided to Erwin.

to conclude that Erwin is entitled to inspect the records demanded in request number 11 under any provision of the Corporation Act and therefore denies request number 11 in its entirety.

26. The Court now turns to request numbers 3 through 6, the remainder of request number 7, and request numbers 9 and 10. The Court begins its analysis of these requests with a discussion of the relevant law.

27. As this Court explained in *Sharman v. Fortran Corporation*,

> [t]he [Corporation] Act provides certain inspection rights to qualified shareholders. A qualified shareholder is a "person who shall have been a shareholder in the corporation for at least six months immediately preceding his demand or who shall be the holder of at least five percent (5%) of the corporation's outstanding shares of any class." N.C. Gen. Stat. § 55-16-02(g). . . . The Act grants qualified shareholders rights of inspection in two "separate and distinct categories." Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 10.01 (7th ed. 2017). N.C. Gen. Stat. § 55-16-02(a) grants what are generally referred to as "absolute rights" of inspection, and section 55-16-02(b) grants what are generally described as "qualified rights" of inspection. *Id.*

2018 NCBC LEXIS 27, at *7–8 (N.C. Super. Ct. Apr. 2, 2018). The Corporation Act also permits a qualified shareholder to file an action seeking to enforce his statutory right of inspection. *See* N.C.G.S. § 55-16-04(a)–(b).[9]

28. Here, it is undisputed that Myers Park is a North Carolina corporation governed by the Corporation Act. It is also undisputed that Erwin has been a Myers Park shareholder since 2008, thus making Erwin a qualified shareholder, as defined under section 55-16-02(g) of the Corporation Act. Therefore, the Court is tasked with

---

[9] A qualified shareholder who proceeds under section 55-16-04(b) is entitled to "expedited" consideration of his action.

determining whether Erwin, as a qualified shareholder, has a right to inspect the records he seeks from Myers Park that have not already been produced (excluding the documents described in request number 11, which the Court has denied).

A.    **Absolute Right of Inspection Under Section 55-16-02(a)**

29.    Section 55-16-01(e) of the Corporation Act requires a corporation to keep at its principal office a copy of the following records:

> (1) [The corporation's] articles or restated articles of incorporation and all amendments to them currently in effect;
>
> (2) [The corporation's] bylaws or restated bylaws and all amendments to them currently in effect;
>
> (3) Resolutions adopted by [the corporation's] board of directors creating one or more classes or series of shares, and fixing their relative rights, preferences, and limitations, if shares issued pursuant to those resolutions are outstanding;
>
> (4) The minutes of all shareholders' meetings, and records of all action taken by shareholders without a meeting, for the past three years;
>
> (5) All written communications to shareholders generally within the past three years and the financial statements required to be made available to the shareholders for the past three years under G.S. 55-16-20;
>
> (6) A list of the names and business addresses of [the corporation's] current directors and officers; and
>
> (7) [The corporation's] most recent annual report delivered as required by G.S. 55-16-22.

N.C.G.S. § 55-16-01(e). In turn, section 55-16-02(a) grants qualified shareholders an absolute right to inspect and copy these records as follows:

> A qualified shareholder of a corporation is entitled to inspect and copy, during regular business hours at the corporation's principal office, any of the records of the corporation described in G.S. 55-16-01(e) if he gives

the corporation written notice of his demand at least five business days before the date on which he wishes to inspect and copy.

N.C.G.S. § 55-16-02(a).

30. As noted, Erwin is a qualified shareholder. Further, Erwin's Inspection Demand, delivered on 12 March 2021 to Myers Park, requested that Myers Park provide Erwin with the records identified in the Inspection Demand by 22 March 2021, thereby giving Myers Park written notice of Erwin's demand for inspection at least five business days before the date on which Erwin demanded to inspect and copy the records.

31. Accordingly, Erwin has shown that he satisfied the requirements of section 55-16-02(a), and the Court must now determine whether any records requested by Erwin in the Inspection Demand fall within the categories of records described in section 55-16-01(e). Based on the Court's review of the Demand Letter, request numbers 3 and 4 demanded such records.

### i. *Request Number 3*

32. Request number 3 demanded, in part, "[t]he minutes of all Myers Park shareholders meetings . . . that address or discuss: (a) the Project; (b) Myers Park revenue shortfalls; or (c) plans or proposals to address revenue shortfalls" from 1 January 2019 through 12 March 2021. (Demand 4.) Erwin has an absolute right to inspect these records. *See* N.C.G.S. § 55-16-01(e)(4) (establishing that "[t]he minutes of all shareholders' meetings . . . for the past three years" are records subject to a qualified shareholder's absolute right of inspection).

33. However, Zoutewelle's deposition testimony reflects that Myers Park apparently did not create and thus does not have in its possession minutes of any shareholder meetings from 1 January 2019 through 12 March 2021, even though there may have been at least one shareholder meeting that took place during that period (the 2020 annual shareholder meeting). (Zoutewelle Dep. 29.)

34. Erwin has not challenged or rebutted Zoutewelle's testimony on this matter. Consequently, based on this undisputed evidence showing that Myers Park does not have in its possession any shareholder meeting minutes responsive to request number 3—and notwithstanding Erwin's absolute right to inspect such minutes—the Court has no choice but to deny request number 3 to the extent that it demanded shareholder meeting minutes from 1 January 2019 through 12 March 2021.[10]

35. Request number 3 also demanded "the records of all final actions taken by Myers Park shareholders . . . without a meeting that address or discuss: (a) the Project; (b) Myers Park revenue shortfalls; or (c) plans or proposals to address revenue shortfalls" from 1 January 2019 through 12 March 2021. (Demand 4.) The parties' briefs and other supporting materials are unclear as to whether this demand remains in dispute, and counsel for the parties did not provide clarity on this matter during the July 7 Hearing.

---

[10] The Court finds troubling Myers Park's apparent failure to comply with its statutory obligation to "keep as permanent records minutes of all meetings of its . . . shareholders." N.C.G.S. § 55-16-01(a).

36. In any event, the Corporation Act grants a qualified shareholder the absolute right to inspect the "records of all action taken by shareholders without a meeting" from the past three years. N.C.G.S. § 55-16-01(e)(4). Therefore, the Court determines that, based on the statute and the Inspection Demand, Erwin is entitled to inspect the records of all final actions taken by Myers Park's shareholders without a meeting from 1 January 2019 through 12 March 2021 that address or discuss (1) the Project, (2) revenue shortfalls, or (3) plans or proposals to address revenue shortfalls, and the Court thus orders that Myers Park produce these documents to the extent that Erwin demanded them and to the extent that these records are in Myers Park's possession and have not already been produced.

### ii. *Request Number 4*

37. Because a qualified shareholder has an absolute right to inspect "[a]ll written communications to shareholders generally within the past three years[,]" N.C.G.S. § 55-16-01(e)(5), the Court concludes that Erwin is entitled to inspect "[a]ll written communications to shareholders generally [from 1 January 2019 through 12 March 2021] that address or discuss: (a) the Project; (b) Myers Park revenue shortfalls; or (c) plans or proposals to address revenue shortfalls[,]" as demanded in request number 4. (Demand 4.)

38. According to Erwin, Myers Park has produced some, but not all, records responsive to request number 4. The specific records that Erwin contends have not been produced are (1) "renderings, narratives, presentations, and brochures" related to the Project, which Erwin asserts were shared with shareholders at a shareholder

meeting, and (2) "[w]ritten communications to shareholders generally that address or discuss Myers Park revenue shortfalls or plans or proposals to address revenue shortfalls." (Pl.'s Opening Br. 10 (citing Zoutewelle Dep. 43–44); Pl.'s Reply Br. 12, ECF No. 34.)

39. With respect to the renderings, narratives, presentations, and brochures related to the Project, Myers Park's opposition brief represented that it had already provided these records to Erwin. (Def.'s Resp. Br. 15.) Then, in response to the Court's questioning during the July 7 Hearing, Myers Park's counsel clarified that it had not, in fact, produced those records because Myers Park did not believe these records constituted written communications to shareholders. After additional questioning by the Court, Myers Park's counsel appeared to concede that the records could properly be construed as written communications to shareholders. Also, Myers Park's counsel emailed the Court, with a copy to opposing counsel, following the July 7 Hearing and represented that Erwin's counsel had been provided a "brochure (including schematics)."

40. The Court concludes that the statutory term "written communications to shareholders[,]" N.C.G.S. § 55-16-01(e)(5), includes renderings, narratives, presentations, and brochures presented to shareholders at a shareholder meeting. Therefore, to the extent that Myers Park has not already done so, it shall produce any renderings, narratives, presentations, and brochures related to the Project that it shared with its shareholders at any shareholder meeting that took place between 1 January 2019 and 12 March 2021.

41.    As to written communications to shareholders generally that address or discuss Myers Park's revenue shortfalls or plans or proposals to address revenue shortfalls, Myers Park states that "in 2020, there were no revenue shortfalls in the sense that revenues exceeded expenses, and—as reflected in the financial documents—[Myers Park] ended the year with a record high of $2.87MM [sic] in cash, about twice the cash position of year end 2019." (Def.'s Resp. Br. 5 n.2.)  Erwin, on the other hand, asserts that "revenue shortfalls measure actual revenue against projected revenue—projections that Myers Park refuses to produce." (Pl.'s Reply Br. 3.)

42.    Myers Park must produce any written communications to shareholders generally from 1 January 2019 through 12 March 2021 that address or discuss (1) its actual revenue falling short of its projected revenue or (2) plans or proposals to address its actual revenue falling short of its projected revenue.  That Erwin chose to tailor request number 4 to certain topics does not take away his absolute right to inspect "*[a]ll written communications to shareholders generally* within the past three years[,]" N.C.G.S. § 55-16-01(e)(5) (emphasis added), a right that necessarily extends to written communications to shareholders generally regarding Myers Park's actual revenue falling short of its projected revenue.

43.    In sum, the Court grants request number 4 in its entirety.

**B.    Qualified Right of Inspection Under Section 55-16-02(b)**

44.    Pursuant to section 55-16-02(b) of the Corporation Act,

> [a] qualified shareholder of a corporation is entitled to inspect and copy, during regular business hours at a reasonable location specified by the

corporation, any of the following records of the corporation if the shareholder meets the requirements of subsection (c) and gives the corporation written notice of his demand at least five business days before the date on which he wishes to inspect and copy:

(1) Records of any final action taken with or without a meeting by the board of directors, or by a committee of the board of directors while acting in place of the board of directors on behalf of the corporation, minutes of any meeting of the shareholders and records of action taken by the shareholders without a meeting, to the extent not subject to inspection under G.S. 55-16-02(a);

(2) Accounting records of the corporation; and

(3) The record of shareholders[.]

N.C.G.S. § 55-16-02(b).

45. Unlike the absolute right of inspection under section 55-16-02(a), the right of inspection under section 55-16-02(b) is considered a qualified one because a qualified shareholder may inspect and copy the records listed in section 55-16-02(b) only if "(1) [h]is demand is made in good faith and for a proper purpose; (2) [h]e describes with reasonable particularity his purpose and the records he desires to inspect; and (3) [t]he records are directly connected with his purpose." N.C.G.S. § 55-16-02(c).

46. As noted, Erwin has demonstrated that he is a qualified shareholder and that he gave written notice of his demand for inspection at least five business days before the date on which he demanded to inspect and copy the records. Accordingly, the Court must now assess whether Erwin has met the three requirements of section 55-16-02(c).

47.     Myers Park argues that Erwin's Inspection Demand was not made for a proper purpose. According to Myers Park, the records sought by Erwin "are directed to a re-assessment of the Board's business judgment as to whether the Project should or should not be undertaken and what contractors should or should not be hired to complete the Project," which represents an improper "[s]econd-guessing [of] a corporate board's business judgment." (Def.'s Resp. Br. 14.) In other words, Myers Park believes that a corporation can use the business judgment rule to shield itself from a shareholder's statutory right to inspect certain records of the corporation.

48.     The Court disagrees. As Erwin correctly points out, Myers Park has not cited to any controlling North Carolina law supporting Myers Park's theory, and the Court's own research also has not revealed such law.[11]

49.     More importantly, the Court concludes that Erwin asserted a proper purpose in the Inspection Demand. *See Parsons v. Jefferson-Pilot Corp.*, 106 N.C. App. 307, 323 (1992) ("To determine whether a shareholder's *demand* meets the requirements of N.C.G.S. § 55-16-02(c), the trial court must focus upon the demand itself[.]"), *aff'd in part, rev'd in part on other grounds*, 333 N.C. 420 (1993). Indeed, the Inspection Demand stated that Erwin

> is making this demand for inspection in good faith and for a proper
> purpose, specifically to investigate: (1) whether the Project is in the best

---

[11] *Cf. Seraph Garrison, LLC v. Garrison*, 247 N.C. App. 115, 122 (2016) ("The business judgment rule operates primarily as a rule of evidence or judicial review and creates, first, an initial evidentiary presumption that in making a decision the directors acted with due care (i.e., on an informed basis) and in good faith in the honest belief that their action was in the best interest of the corporation, and second, absent rebuttal of the initial presumption, a powerful substantive presumption that a decision by a loyal and informed board will not be overturned by a court unless it cannot be attributed to any rational business purpose." (cleaned up)).

interest of Myers Park; (2) whether the Board's approval of the Project complies with Myers Park's Bylaws; (3) whether any improper transactions have occurred in connection with the Board's approval of the Project; (4) any potential mismanagement, misappropriation, misapplication, conflict of interest, or improper use of Myers Park funds related to the Project; and (5) the Project's financial feasibility and implications on costs, debt, fees, and income.

(Demand 5.) The Inspection Demand further stated that Erwin "intends to communicate" with other club members and shareholders of Myers Park about his investigation into these matters. (Demand 3.)

50. This stated purpose by Erwin is the type generally recognized as satisfying the proper purpose requirement necessary to support a shareholder inspection demand. *See, e.g.*, *Cooke v. Outland*, 265 N.C. 601, 615 (1965) (holding that "a proper purpose" existed where a shareholder's written demand for inspection "indicate[d] on [its] face" that the shareholder was "investigating the conduct of [the corporation's] management to determine the [corporation's] financial condition" and also "whether it [was] efficiently managed"); *Carter v. Wilson Constr. Co.*, 83 N.C. App. 61, 65 (1986) (noting that "[p]urposes which previously have been deemed proper" include "the shareholder's good faith desire" to "investigate the conduct of the management" and "determine the financial condition of the corporation"); *Sharman*, 2018 NCBC LEXIS 27, at *14–15 (concluding that a written demand for inspection reflected "a proper purpose" where the demand stated that the shareholders needed to "determine whether 'any improper transactions have occurred and to determine any possible mismanagement of [the corporation] or any possible misappropriation, misapplication, or improper use of any property or asset of [the corporation]' ");

N.C.G.S. § 55-16-02 Official Comment 3 ("As a practical matter, a shareholder who alleges a purpose in general terms, such as a desire . . . to communicate with fellow shareholders, or to determine whether improper transactions have occurred, has been held to allege a 'proper purpose.' ").[12]

51. In addition, where, as here, a qualified shareholder has stated a proper purpose in his inspection demand, the shareholder is entitled to a "presumption of good faith," which the corporation can only overcome "by carrying its burden to show that [the shareholder's] purpose is improper." *Sharman*, 2018 NCBC LEXIS 27, at *15 (citing *Carter*, 83 N.C. App. at 65). Myers Park has failed to meet that burden here.[13]

52. Myers Park has not offered sufficient evidence or law upon which the Court can conclude that Erwin's Inspection Demand was not made in good faith and for a proper purpose.

53. Myers Park appears to also question whether Erwin has satisfied the directly connected requirement. (Def.'s Resp. Br. 13–14.) On this issue, the Court concludes that Erwin has sufficiently demonstrated that the records he requested from Myers Park are directly connected with his stated purpose for requesting those

---

[12] Although the Official Comment to section 55-16-02 is not binding because it was not enacted into law, it was "included with the printing of the statute," and thus, it is "relevant in construing the intent of the statute." *Miller v. First Bank*, 206 N.C. App. 166, 171 (2010).

[13] In its opposition brief, Myers Park questions Erwin's motive for bringing this action by referencing Erwin's deposition testimony regarding an email account entitled "mpccwomen1@gmail.com," which Myers Park alleges Erwin used to communicate with other members of Myers Park. (Def.'s Resp. Br. 2.) However, Myers Park did not submit to the Court for its consideration the referenced deposition testimony.

records, as required under section 55-16-02(c). The Court bases its conclusion on its review of the record before it, including Erwin's Inspection Demand and all the records demanded therein.

54.     For the first time, at the July 7 Hearing, Myers Park's counsel argued that the Inspection Demand did not describe with reasonable particularity Erwin's request for records relating to Myers Park's "revenue shortfalls" (though counsel did concede that Erwin described with reasonable particularity all other requested records, as well as Erwin's stated purpose for requesting records from Myers Park). As noted, Erwin asserts that the term "revenue shortfalls," as used by Erwin in the Inspection Demand, means situations where Myers Park's actual revenue fell short of its projected revenue.

55.     "Whether a shareholder has described . . . the desired records with reasonable particularity necessarily depends upon the facts and circumstances of each case." *Parsons v. Jefferson-Pilot Corp.*, 333 N.C. 420, 429 (1993). The Official Comment to section 55-16-02 "provides that under the 'reasonable particularity' requirement, a shareholder should make more meaningful statements of purpose and the desired records when 'feasible.'" *Id.* (quoting N.C.G.S. § 55-16-02 Official Comment 3). Put differently, the test for the reasonable particularity requirement is a "relative one" such that in some cases, "[e]ven a generalized designation should be sufficient" when the shareholder cannot "give a more particular description" and the corporation "will have no difficulty in understanding what is wanted." *Id.* (quoting 8

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2211, at 628–31 (1970)).

56.     Applying these principles to the facts and circumstances of this case, the Court concludes that Myers Park should not have had any trouble understanding that when Erwin used the term "revenue shortfalls," he meant a situation where Myers Park's actual revenue fell short of its projected revenue.  Indeed, the Inspection Demand referenced "concerns" that Erwin had about the Project's "financial feasibility and implication on Myers Park's financial health."  (Demand 2.)  The Inspection Demand also stated that "[t]here is no evidence that the Project will increase revenues or provide any real benefit to Myers Park" and that "[i]t will instead make a bad financial situation worse." (Demand 2.)  Moreover, Myers Park's agent, Zoutewelle, demonstrated a strong understanding of financial concepts during her deposition, and the Court is confident that at the time Erwin made his Inspection Demand, Myers Park had other capable agents like Zoutewelle who could have explained to Myers Park what records Erwin was seeking.

57.     For these reasons, the Court concludes that Erwin's Inspection Demand described with reasonable particularity his request for records relating to Myers Park's "revenue shortfalls."[14]

---

[14] Plaintiff's counsel seemingly suggested during the July 7 Hearing that Plaintiff is also seeking records related to "revenue shortfalls" of certain departments of Myers Park, such as the food and beverage department.  The Court, however, concludes that the Inspection Demand does not describe with reasonable particularity such a request, and thus, to the extent that the Court requires production of records related to Myers Park's "revenue shortfalls," Defendant shall only be required to produce records relating to Myers Park as a whole, and not to any specific departments of Myers Park.

58. In sum, the Court determines that Erwin has met the three requirements of section 55-16-02(c). The Court next considers whether any of the remaining records demanded in request numbers 3, 5, 6, 7, 9, and 10 from the Inspection Demand fall within the categories of records that Erwin is entitled to inspect under section 55-16-02(b).

### i. *Request Number 3*

59. The remainder of request number 3 demanded "[t]he minutes of all . . . Board meetings, and the records of all final actions taken by . . . the Board, or committees of the Board in place of the Board . . . that address or discuss: (a) the Project; (b) Myers Park revenue shortfalls; or (c) plans or proposals to address revenue shortfalls" from 1 January 2019 through 12 March 2021. (Demand 4.)

60. The Court first addresses the requested records pertaining to the Board. To begin, the Court concludes that Erwin's request to inspect the minutes of all Board meetings that address or discuss the above three subjects is overbroad. Section 55-16-02(b) grants Erwin a qualified right to inspect "[r]ecords of any *final* action taken with or without a meeting by" the Board. N.C.G.S. § 55-16-02(b)(1) (emphasis added). The statute, however, does not grant Erwin the right to inspect Board meeting minutes that do not reflect final action taken by the Board. *See Sharman*, 2018 NCBC LEXIS 27, at *19 ("The drafters of the [Corporation Act] substituted this reference to 'final action taken' in lieu of the Model Act's reference to 'excerpt from minutes' with the intent of excluding discussions and preliminary actions by the board and its committees." (quoting Robinson, *supra*, § 10.03[2])).

61.     Thus, the Court grants request number 3 to the extent that it demanded to inspect records of all final action taken by the Board from 1 January 2019 through 12 March 2021 that address or discuss: (1) the Project, (2) Myers Park revenue shortfalls, or (3) plans or proposals to address revenue shortfalls, and the Court denies request number 3 to the extent that it demanded minutes of Board meetings that do not reflect any final action taken by the Board.

62.     Accordingly, to the extent that Myers Park has in its possession additional Board meeting minutes that reflect final action taken by the Board and that are responsive to request number 3, as granted by the Court, Myers Park must produce those minutes.[15]

63.     In addition, to the extent that it has not already done so, Myers Park must produce the following records that Erwin claims have not yet been produced by Myers Park: (1) record(s) of the Board's approval of the 2019 membership survey that was the origin of the Project; (2) record(s) of the Board's approval of loans relating to the Project; (3) record(s) of the Board's approval of a "negative pledge agreement" relating to the Project; (4) record(s) of the Board's approval of the grant of collateral in connection with the Project; and (5) record(s) of the Board's approval of the budgets for the Project. (*See* Pl.'s Reply Br. 12.) The Court determines that these records

---

[15] The record shows that Myers Park has provided Erwin with several documents containing redacted Board meeting minutes. (*See, e.g.*, Pl.'s Opening Br. Ex. A, ECF No. 30.1.) Myers Park should review all unredacted Board meeting minutes in its possession to ensure compliance with the Court's ruling on request number 3. The Court reserves the right to review minutes of Board meetings in camera if necessary.

reflect final action taken by the Board (i.e., approval) and are responsive to request number 3, as granted by the Court.

64. As to Erwin's request for the records of all final actions taken by committees of the Board in place of the Board from 1 January 2019 through 12 March 2021 that address or discuss (1) the Project, (2) Myers Park revenue shortfalls, (3) plans or proposals to address revenue shortfalls, Erwin has a qualified right to inspect these records. *See* N.C.G.S. § 55-16-02(b)(1) (permitting a qualified shareholder to inspect "[r]ecords of any final action taken with or without a meeting by . . . a committee of the board of directors . . . on behalf of the corporation").

65. However, Myers Park represents in its opposition brief that "because there have not been any final actions taken by a committee in place of the Board, there are no such records to produce." (Def.'s Resp. Br. 18.) Zoutewelle also testified during her deposition that she "had not seen" a committee of the Board take final action in place of the Board and that "[t]here are no actions that any committee has taken related to this project that aren't final actions of the board." (Zoutewelle Dep. 33, 80.) As a result, and based on the same considerations discussed above regarding Erwin's request for shareholder meeting minutes, the Court determines that there are no records of final committee action, as described in request number 3, and therefore denies request number 3 to the extent that it demanded such records.

66. In sum, the Court grants in part and denies in part request number 3, as set forth in section III.A.i. and section III.B.i. of this Order and Opinion.

### ii. *Request Number 5*

67. Request number 5 seeks "[t]he capital and operating budgets that: (a) the Financial Committee in coordination with the General Manager recommended to the Board for adoption for 2020 and 2021, as required in Article IX, Section 2(a) of the Bylaws; and (b) and [sic] the Board approved for 2020 and 2021, along with all amendments to those budgets, as required in Article IX, Section 2(b) of the Bylaws." (Demand 4.)

68. Erwin argues he is entitled to inspect these documents because they constitute both records of final action taken by the Board and accounting records of Myers Park. (*See* Pl.'s Opening Br. 18 n.8.) Myers Park disagrees, contending in its brief that *Sharman* makes clear that the capital and operating budgets and amendments to the budgets are not records of final action by the Board, (Def.'s Resp. Br. 16–17), and arguing at the July 7 Hearing that these documents are not accounting records of Myers Park.

69. Based on a straightforward application of section 55-16-02(b), the Court concludes that, to the extent that the 2020 and 2021 capital and operating budgets and any amendments to these budgets were *approved* by the Board, these budgets and amendments can properly be considered "[r]ecords of any final action taken . . . by the board of directors[.]" N.C.G.S. § 55-16-02(b)(1). In the Court's view, this statutory language is broad enough to cover a budget approved by a corporation's board of directors, since the board's approval in this context is a final action taken by the board, and the budget, as approved by the board, is logically a record of that final

action taken by the board. Nothing in section 55-16-02(b) or the Official Comment to this section suggests that the Court's application of this broad statutory language is improper.

70. Furthermore, Myers Park's reliance on *Sharman* is misguided. In *Sharman*, this Court observed that "[t]he drafters of [section 55-16-02(b)] substituted this reference to 'final action taken' in lieu of the Model Act's reference to 'excerpt from minutes' with the intent of excluding discussions and preliminary actions by the board and its committees." 2018 NCBC LEXIS 27, at \*19 (quoting Robinson, *supra*, § 10.03[2]). Here, the Board's *approval* of the capital and operating budgets and any amendments to these budgets cannot reasonably be likened to "discussions and preliminary actions" by the Board.

71. In short, the Court grants request number 5 in its entirety on the basis that the records demanded in this request constitute records of final action taken by the Board. As a result, the Court need not consider whether budgets approved by a corporation's board of directors can also be properly considered accounting records of the corporation.

### iii. *Request Number 6*

72. Request number 6 demanded production of "[a]ll capital expenditures in excess of $5,000, which are required to be approved by the Board in Article IX, Section 2(c) of the Bylaws, related to: (a) the Project; or (b) any plans or proposals to address revenue shortfalls" from 1 January 2019 through 12 March 2021. (Demand 4.)

73. Based on the same considerations discussed above regarding request number 5, the Court concludes that, to the extent that the capital expenditures demanded in request number 6 were approved by the Board, these expenditures can properly be considered "[r]ecords of any final action taken . . . by the board of directors[.]" N.C.G.S. § 55-16-02(b)(1).

74. Accordingly, the Court will require Myers Park to produce records evidencing the capital expenditures described in request number 5, but only to the extent that such expenditures were, in fact, approved by the Board.

75. In sum, the Court grants request number 6, subject to the above parameters set forth by the Court.

### iv.    Request Numbers 7, 9, and 10

76. The Court next considers request numbers 7, 9, and 10 together, as Erwin contends that the records demanded in these requests all constitute accounting records of Myers Park.

77. Pursuant to section 55-16-02(b), a qualified shareholder has the qualified right to inspect the "[a]ccounting records of the corporation[.]" N.C.G.S. § 55-16-02(b)(2). "Although the term is left undefined in the [Corporation] Act, the Official Comments describe 'accounting records' as 'records that permit financial statements to be prepared which fairly present the financial position and transactions of the corporation.'" *Sharman*, 2018 NCBC LEXIS 27, at *23 (quoting N.C.G.S. § 55-16-01 Official Comment 2). In addition, the North Carolina Court of Appeals has noted that accounting records "are generally defined as '[t]he formal journals and ledgers, and

the vouchers, invoices, correspondence, contracts, and other sources or support for such records . . . .' " *Parsons*, 106 N.C. App. at 318–19 (quoting Kohler's Dictionary for Accountants 13–14 (W.W. Cooper & Y. Ijiri eds., 6th ed. 1983)).

78. Request number 7 demanded, in relevant part, "[a]ll Myers Park accounting records . . . including but not limited to . . . general ledgers" from 1 January 2019 through 12 March 2021. (Demand 4.) Consistent with the case law discussed above surrounding the term "accounting records," the Court concludes that the remaining records demanded in request number 7 can properly be considered accounting records of Myers Park. Notably, Zoutewelle's deposition testimony establishes that Myers Park maintains a general ledger, though it is unclear from the record whether Myers Park has produced this general ledger. (Zoutewelle Dep. 54.) As a result, to the extent that it has not already done so, Myers Park must produce its general ledger from 1 January 2019 through 12 March 2021.

79. Erwin also asserts that he is entitled to "[a]ll documents provided to [Myers Park's] accountants to compile [Myers Park's] financial statements in 2019 and 2020[,]" as part of his request for Myers Park's accounting records. (Pl.'s Reply Br. 13.) The Court agrees. Since a corporation's accounting records include "records that permit financial statements to be prepared," *Sharman*, 2018 NCBC LEXIS 27, at *23 (citation omitted), the Court concludes that Erwin is entitled to inspect the same documents that Myers Park provided to its accountants to prepare Myers Park's 2019 and 2020 financial statements.

80. At the July 7 Hearing, Myers Park's counsel represented that all documents sent to Myers Park's accountants to prepare its 2020 financial statements had, by that date, been produced while only some of the documents sent to Myers Park's accountants to prepare its 2019 financial statements had been produced. Counsel further represented that Myers Park has no record of the documents it sent to its accountants for the 2019 financial statements, since the online ShareFile account used by Myers Park to electronically transmit these documents to the corporation's accountants is no longer active. The Court concludes, however, that Myers Park has not presented to the Court sufficient evidence to corroborate its counsel's representations. Thus, having determined that Erwin is entitled to inspect the same documents that Myers Park sent to its accountants to prepare Myers Park's 2019 and 2020 financial statements, the Court will require Myers Park to conduct a thorough search of all its records for all documents that Myers Park provided to its accountants to prepare Myers Park's 2019 and 2020 financial statements.[16] If the records search does not reveal any new responsive documents, Myers Park must file an affidavit attesting to that fact, and the affidavit must also describe the method(s) Myers Park used to conduct its records search. But if the records search does reveal additional responsive documents, Myers Park must produce those documents.

81. In sum, the Court grants request number 7 to the extent that it demanded Myers Park "accounting records," including "general ledgers." Further, the records

---

[16] To be clear, Myers Park must search for the documents that it sent to its accountants for the preparation of its financial statements, and not simply the documents that the accountants ultimately relied on to prepare the statements.

covered by this request include the same documents that Myers Park sent to its accountants to prepare Myers Park's 2019 and 2020 financial statements.

82. As to request number 9, the records demanded in this request are "[a]ll reports prepared by and communications with the planning consultants, the building contractors and subcontractors, and any other consultants or advisors that Myers Park retained in connection with the Project" from 1 January 2019 through 12 March 2021. (Demand 4.) Meanwhile, request number 10 demanded "[a]ll invoices, correspondence, contracts, reports, projections, plans, or budgets from any consultants or other third parties Myers Park has retained or has considered retaining in connection with the Project" from 1 January 2019 through 12 March 2021. (Demand 4.)

83. Erwin contends that these records constitute accounting records of Myers Park. (*See* Pl.'s Reply Br. 11.) The Court agrees in part.

84. On their face, the records demanded in request numbers 9 and 10 do not appear to be accounting records, as interpreted by North Carolina courts. However, to the extent that any of the "reports," "communications," "invoices," "correspondence," "contracts," "reports," "projections," "plans," or "budgets" described in these requests were sources of information used by Myers Park to prepare or maintain its general ledger or the "full accounting system" (Jonas) identified by Zoutewelle in her deposition testimony, (Zoutewelle Dep. 67), these records can properly be considered accounting records of Myers Park. *See Parsons*, 106 N.C. App. at 318–19 (describing accounting records as "the formal journals and ledgers, and the

vouchers, invoices, correspondence, contracts, and other sources or support for such records" (citation omitted)). And to the extent that any of the records described in request numbers 9 and 10 were provided by Myers Park to its accountants for the purpose of preparing either the 2019 or 2020 financial statements, Erwin is entitled to inspect them based on the same considerations discussed above in paragraphs 79 and 80.

85. As such, the Court grants request numbers 9 and 10, subject to the above parameters set forth by the Court. To the extent that the records demanded in request numbers 9 and 10 do not fit within these parameters, the Court denies these requests.

## IV. CONCLUSION

86. For the foregoing reasons, and pursuant to section 55-16-04 of the Corporation Act, the Court **GRANTS in part** and **DENIES in part** Erwin's Inspection Request and hereby **ORDERS** as follows:

    a. Erwin's request number 1 for "[a] list of the names, addresses, phone numbers, and email addresses of all current Myers Park shareholders in alphabetical order, by class of shares showing the number and class of shares held by each" is **DENIED as MOOT**, as addressed more fully above in paragraphs 23 and 24.

    b. Erwin's request number 2 for "[a] list of the names, addresses, phone numbers, and email addresses of all current Myers Park members in

alphabetical order by category of membership" is **DENIED as MOOT**, as addressed more fully above in paragraphs 23 and 24.

c. Erwin's request number 3 for "[t]he minutes of all Myers Park shareholders meetings and Board meetings, and the records of all final actions taken by Myers Park shareholders, the Board, or committees of the Board in place of the Board without a meeting that address or discuss: (a) the Project; (b) Myers Park revenue shortfalls; or (c) plans or proposals to address revenue shortfalls" is **GRANTED in part** and **DENIED in part**, as addressed more fully above in paragraphs 32 through 36 and 59 through 66.

d. Erwin's request number 4 for "[a]ll written communications to shareholders generally that address or discuss: (a) the Project; (b) Myers Park revenue shortfalls; or (c) plans or proposals to address revenue shortfalls" is **GRANTED**, as addressed more fully above in paragraphs 37 through 43.

e. Erwin's request number 5 for "[t]he capital and operating budgets that: (a) the Financial Committee in coordination with the General Manager recommended to the Board for adoption for 2020 and 2021, as required in Article IX, Section 2(a) of the Bylaws; and (b) and [sic] the Board approved for 2020 and 2021, along with all amendments to those budgets, as required in Article IX, Section 2(b) of the Bylaws" is

**GRANTED**, as addressed more fully above in paragraphs 67 through 71.

f. Erwin's request number 6 for "[a]ll capital expenditures in excess of $5,000, which are required to be approved by the Board in Article IX, Section 2(c) of the Bylaws, related to: (a) the Project; or (b) any plans or proposals to address revenue shortfalls" is **GRANTED**, as addressed more fully above in paragraphs 72 through 75.

g. Erwin's request number 7 for "[a]ll Myers Park accounting records and financial statements, including but not limited to: balance sheets, general ledgers, income/profit and loss statements, and cash flow statements" is **GRANTED in PART** and **DENIED in part as MOOT**, as addressed more fully above in paragraphs 23 and 24 and 76 through 81. Myers Park shall comply with the affidavit requirements set forth above in paragraph 80, as applicable.

h. Erwin's request number 8 for "Myers Park's annual financial statement for 2020 that meets the requirements of N.C.G.S. § 55-16-20" is **DENIED as MOOT**, as addressed more fully above in paragraphs 23 and 24.

i. Erwin's request number 9 for "[a]ll reports prepared by and communications with the planning consultants, the building contractors and subcontractors, and any other consultants or advisors that Myers Park retained in connection with the Project" is **GRANTED in part** and

**DENIED in part**, as addressed more fully above in paragraphs 76 and 82 through 85.

j. Erwin's request number 10 for "[a]ll invoices, correspondence, contracts, reports, projections, plans, or budgets from any consultants or other third parties Myers Park has retained or has considered retaining in connection with the Project" is **GRANTED in part** and **DENIED in part**, as addressed more fully above in paragraphs 76 and 82 through 85.

k. Erwin's request number 11 for "[a]ll communications between any member of the Board and any other person that discuss: (a) the Project; (b) Myers Park revenue shortfalls; or (c) plans or proposals to address revenue shortfalls" is **DENIED**, as addressed more fully above in paragraphs 23 and 25.

87. Further, Myers Park is **ORDERED** to make the necessary records described above, and not previously produced, available to Erwin for inspection and copying no later than 30 August 2021 to the extent that those records exist and are in Myers Park's possession. Pursuant to section 55-16-04(d) of the Corporation Act, the production of these records shall be subject to the terms of the Protective Order entered by the Court on 20 April 2021 at ECF No. 17.

88. In addition, it is **ORDERED** that no later than 6 September 2021, Myers Park shall file a certification with the Court, signed by Myers Park's counsel and the Chair of its Board of Directors, attesting to Myers Park's full compliance with this

Order and Opinion. By that date, Myers Park shall also comply with the affidavit requirements set forth above in paragraph 80, as applicable.

89. Finally, the Court **ORDERS** Erwin and Myers Park to file a joint status report no later than 20 September 2021. The status report shall advise the Court whether any issues related to Myers Park's production of documents requested by the Inspection Demand remain pending. The status report shall include a proposed schedule for the resolution of any motion seeking recovery of fees and costs that Erwin intends to file pursuant to section 55-16-04(c) of the Corporation Act.

**SO ORDERED**, this the 27th day of July, 2021.

/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
 for Complex Business Cases